## LEWIS *v.* FOY.

No. 13121. JANUARY 10, 1940.

*Roy S. Drennan, George Brannon,* and *Roland Neeson,* for plaintiff.

*R. S. Foy* and *Homer Beeland,* for defendant.

DUCKWORTH, Justice. Mrs. Elba Lewis brought suit against C. W. Foy, praying for cancellation, injunction, accounting, and general relief. The petition contained the following allegations: On December 25, 1913, petitioner's father died, and she inherited from him a described farm in Taylor County, Georgia. On July 12, 1922, petitioner procured from the Federal Land Bank of Columbia a loan of $4500 to be repaid in 68 semi-annual instalments, and as security for the loan she executed a security deed conveying the farm inherited from her father. During the latter part of 1931 the defendant approached petitioner with an offer to take the farm and operate it and pay all expenses, including taxes and payments on the land bank debt, and then divide the remainder of the income equally with her. She orally agreed to accept the defendant's proposition. On September 18, 1931, the defendant brought a written document to the petitioner which he represented was the

oral agreement for the operation of the farm, reduced to writing. When petitioner undertook to read the instrument, the defendant took it from her before she could read it, and said he was in a hurry and did not have time for her to read it, but said he would explain it to her; whereupon he explained that it embodied their verbal agreement for the operation of the farm by defendant. Having implicit confidence in defendant, because he had been attorney for her father and also attorney for petitioner, she relied on his false and fraudulent representations as to what the paper contained, and signed and delivered it to him. A copy of the paper thus signed was attached to the petition and made a part thereof. It is a plain warranty deed reciting a consideration of $600, obligating defendant to pay petitioner's debt to the Federal Land Bank, and conveying to him the lands which the petitioner inherited from her father. It was witnessed by C. R. Hendrix and H. E. Duncan, N. P. By amendment the petitioner alleged that at the time the document was presented to her she did not have her eye-glasses or access to them, and that due to her feeble eyesight she was not able to read the document without her glasses, but that she signed the paper because of defendant's representations and her confidence in him. The deed falsely recited a consideration of $600, and was in fact only a colorable scheme whereby the defendant sought to obtain title to petitioner's property by fraud. The petitioner did not learn that the paper which she signed was a warranty deed until May, 1938. The defendant repeatedly told her that he was unable to make a profit from the farm because of market conditions, and gave her ten dollars on five different occasions after the signing of the deed as her profits from the farm, and by these deceptive devices prevented her from discovering the fraud perpetrated on her until May 10, 1938. The defendant has paid $2361.93 on petitioner's note to the Federal Land Bank, of which one payment of $305.14 was paid on October 19, 1931, and another of $301.50 was paid on February 13, 1932. Some taxes have also been paid, but petitioner does not know how much. It was also alleged that defendant obtained possession of live stock and farm implements of a value of $3000 when he took charge of the farm, and he has sold or otherwise disposed of this personal property. The use of the farm which defendant has enjoyed is of the value of $5000. In view of the facts alleged above,

an accounting between the parties is necessary. The defendant demurred generally and specially to the petition as amended. The court sustained the general demurrer and dismissed the action, and the plaintiff excepted.

The primary relief sought by the plaintiff is cancellation of the deed to the defendant. Her claim of right to such relief is put upon alleged fraud of the defendant, by which she was induced to execute the deed. This alleged fraud consists of, first, defendant's taking the deed in question from plaintiff's hands when she undertook to read it; and second, in plaintiff not having her glasses, which were inaccessible and without which she could not read, and the defendant in each case misrepresenting the contents of the deed and stating that he was in a hurry. While there may be serious doubt and uncertainty as to what particular facts will constitute fraud authorizing rescission of a written contract, yet there can be no doubt as to the rule of law by which such facts must be measured in determining whether or not a written contract may be rescinded. The rule may be briefly stated as follows: Any misrepresentation, act or artifice, intended to deceive, and which does deceive another, who is reasonably diligent in the use of the facilities at his command, is a fraud that will authorize a rescission of a written contract. It has often been held by this court that a party to a contract who can read must read, or show a legal excuse for not doing so, and that fraud which will relieve a party who can read must be such as prevents him from reading. *Stoddard Manufacturing Co.* v. *Adams,* 122 *Ga.* 802 (50 S. E. 915); *Truitt-Silvey Hat Co.* v. *Callaway,* 130 *Ga.* 637 (2) (61 S. E. 481); *Weaver* v. *Roberson,* 134 *Ga.* 149 (67 S. E. 662); *Baker* v. *Patton,* 144 *Ga.* 502 (87 S. E. 659); *Stokes* v. *Humphries,* 152 *Ga.* 621 (111 S. E. 36); *Green* v. *Johnson,* 153 *Ga.* 738 (113 S. E. 402); *Martin* v. *Turner,* 166 *Ga.* 293 (143 S. E. 239); *Wynn* v. *First National Bank of Newnan,* 176 *Ga.* 218 (2) (167 S. E. 513); *Swofford* v. *First National Building & Loan Association,* 184 *Ga.* 312, 314 (191 S. E. 103). In *Truitt-Silvey Hat Co.* v. *Callaway,* supra, it was said: "One having the capacity and opportunity to read a written contract, and who signs it, not under any emergency, and whose signature is not obtained by any trick or artifice of the other party, can not afterwards set up fraud in the procurement of his signature to the instrument." Measured by the foregoing rules

of law, how stands the present case? The writing involved is a simple and unambiguous deed conveying land, reciting a consideration, giving the names of the grantor and grantee, and definitely describing the land conveyed. A casual glance at the instrument will clearly disclose the material provisions of the deed. It begins with the following language: "Georgia, Rabun County. In consideration of the sum of six hundred dollars to me in hand paid, at and before the signing and delivering of these presents, the receipt of which is hereby acknowledged, I, Mrs. Elba Lewis of the County of .................. of State of Georgia do hereby sell and convey unto C. W. Foy of the County of Taylor and State of Georgia, his heirs and assigns, a tract or parcel of land which is described as follows:" Then follows a full description of the land and a clause whereby the grantee assumes and agrees to pay a loan of $4500 secured by a deed to secure debt on the described lands and made by Mrs. Elba Lewis to the Federal Land Bank of Columbia, in addition to the above expressed consideration. The deed was properly signed and witnessed.

While the reason stated in the petition why the plaintiff failed to read the deed before signing it was that the defendant took it from her hand, and the reason stated in an amendment was that she did not have her glasses, and these conflicting allegations might have authorized a dismissal of the amended petition because of the conflict, yet, giving the plaintiff the full benefit of both allegations, they did not constitute legal grounds for avoiding the deed. The petition shows that the plaintiff could read, but that she failed to do so, for the reasons stated. Her signing of the deed after it had been taken from her by the defendant is the equivalent of saying that she was satisfied with the defendant's explanation and did not care to be put to the trouble of reading for herself. It is admitted that she had glasses, and no reason is given for failing to delay signing the deed until her glasses could be procured and she could read the same, except the wholly inadequate reason that the defendant stated that he was in a hurry. Not the slightest reason is alleged why the deed could not have been signed at a later date. The plaintiff relies on the case of *Wimberly* v. *Ross*, 152 *Ga.* 258 (3) (109 S. E. 500), as authority for her contentions that the absence of her glasses justified her failure to read the deed before signing it, and that the allegations of the petition in this respect

are sufficient to support the action for cancellation. The facts in that case show that the plaintiff and the defendant were sisters, and that the plaintiff, not having her glasses and not being able to read without them, and placing full faith and confidence in the honesty and integrity of her sister, did sign a paper which her sister said was only for cancellation of a mortgage. The ruling of this court, without citation of authority, was in the following language: "The petition set forth a cause of action for the cancellation of the deed from Sara Ann Ross to the defendant, Laura R. Wimberly." The opinion was rendered by only five Justices, Mr. Chief Justice Fish being absent. Evidently the court considered that a confidential relationship existed between the parties because they were sisters; for otherwise the decision would be in conflict with the rulings made in the various previous decisions of this court cited in this opinion, among which is *Truitt-Silvey Hat Co.* v. *Callaway,* supra, which is a full-bench decision and is binding on this court. The Court of Appeals has consistently held that the mere fact that the failure to read the contract was because the party did not have his glasses and could not read without them, without more, would not authorize a rescission of the contract. *Hanes* v. *Farmers & Merchants Bank,* 20 *Ga. App.* 129 (92 S. E. 896); *Ward* v. *Colt Co.,* 28 *Ga. App.* 24 (109 S. E. 921). The relationship of brother and sister did not exist in the present case.

The plaintiff urges as justification for her negligence and failure to read the deed the fact that the defendant represented her father as an attorney, and that he had at some unnamed date in the past represented her as attorney. The petition shows that her father had been dead nearly twenty years, and thus defendant's relationship with her father could not be given as a basis for a confidential relationship between plaintiff and defendant. The law making the relationship of attorney and client confidential is a salutary one, and it is the duty of the courts to strictly enforce it. That relationship makes it imperative that the client rely implicitly upon the acts and words of his attorney, and he is entitled to the protection of law in reposing this confidence; but this rule is applicable only to the parties while the relationship exists and with reference to the matter involved in that relationship. It can not be extended to embrace at all times every party whom the attorney has represented, though the representation has terminated. The

averment of the petition that because the defendant had represented her father and herself in the past as their attorney at law, and because of this relationship she had implicit confidence in him, amounts to nothing more than an assertion by her that his services were satisfactory, and that her knowledge of his reputation caused her to have confidence in his integrity. The law will not excuse her for failing to read the instrument because of her confidence in the defendant, upon whom she had no legal right to rely, and who the allegations show employed no trick or artifice that caused her to fail to do her duty in reading before signing.

No one can truthfully claim to have been defrauded in a matter about which that one has full knowledge and opportunity to exercise his free choice. The law will protect the innocent against fraud, under the rules above stated; but it demands of every one that he make use of his own facilities to avoid being defrauded. No other rule could safely be adopted and enforced by the courts with reference to written instruments. It is essential to all business relationships that the validity and solemnity of written contracts, freely and voluntarily executed, be upheld. It would be tragic if all such contracts were jeopardized by a rule of law that would permit one of the parties thereto, because of dissatisfaction therewith, to go into court and by oral testimony establishing conduct short of fraud and reasonable diligence obtain nullification of a written contract. If the plaintiff signed the deed here involved without knowing its contents, it was due to her own negligence, and the responsibility is hers and she must abide by the contract as signed. It was not error to sustain the demurrer and dismiss the action. *Judgment affirmed. All the Justices concur.*